**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

TONY TURNAGE #337-857,
    Petitioner,                                        :

              v.                               :   Civil Action No. ELH-11-3373

UNITED STATES PAROLE COMMISSION,  :
    Respondent.

**MEMORANDUM**

On November 21, 2011, Tony Turnage initiated an action against the United States Parole Commission, respondent, pursuant to 28 U.S.C. § 2241, as a petition for habeas corpus relief. ECF 1.[1] In the suit, Turnage, who was then a state prisoner at the Maryland Correctional Institution–Hagerstown (MCI-H), challenged a federal parole detainer. *Id.*[2] He asserted that the detainer, issued as a parole violation warrant, should be dismissed because his requests for its adjudication had been ignored. *Id.* Turnage sought a court order quashing the parole violation warrant, claiming that, as a result of respondent's delay in acting on the detainer, his underlying federal sentence had expired. *Id.* at 2; *see* Letter to United States Parole Commission (Pet. Ex. B, ECF 8 at 5).

---

[1] Mr. Turnage filed his suit without the assistance of counsel. The Court subsequently appointed the Federal Public Defender to represent Mr. Turnage. *See* ECF 12, 14, 16. Despite initial confusion regarding appointment of counsel, Turnage was represented by an attorney during Commission proceedings, discussed *infra*, and with respect to this matter. *See* ECF 31 at 2.

[2] Since the filing of his petition, Turnage has been returned to federal custody and is now housed at FCC-Petersburg, Virginia. *See* ECF 47. However, this transfer does not divest this Court of jurisdiction over the case. *See Stokes v. U.S. Parole Commission*, 374 F.3d 1235, 1238-39 (D.C. Cir. 2004) (when government moves a habeas petitioner after he properly files a petition naming immediate custodian, district court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release); *Ross v. Mebane*, 536 F.2d 1199, 1201-02 (7th Cir. 1976) (once habeas jurisdiction attaches, it is not lost by transfer of the prisoner).

On January 4, 2013, respondent filed a motion for summary judgment (ECF 26) and supporting memorandum of law (ECF 26-1), asserting that the petition for habeas corpus relief should be denied. By Order dated July 23, 2013, I denied respondent's summary judgment motion, without prejudice, and subject to renewal upon supplementation. ECF 39. Respondent filed a supplement to its motion for summary judgment on August 20, 2013 (ECF 43), which was further supplemented on September 5, 2013 (ECF 45) (collectively, the "Motion").[3]

Respondent concedes that the United States Parole Commission (the "Commission") failed to commence its dispositional review of the detainer within its regulatory time-frame. ECF 34 at 4. Nevertheless, the Commission argues that the petition is subject to dismissal, because the proper remedy for a delayed hearing is not habeas relief, but rather mandamus. *See* ECF 26-1 at 8. Further, respondent maintains that Turnage's due process rights have not been abridged. *See id.* In addition, the Commission asserts that Turnage's petition is moot, as the only relief to which he is entitled, the conduct of a hearing, has now occurred.[4] *See id.*; *see also* ECF 43 at 3-6; ECF 45.

Turnage's ongoing responses to respondent's various pleadings have been considered[5] in opposition to this latest round of dispositive briefing.[6] *See* ECF 8, 27, 33, 35. No hearing is

---

[3] I have also considered petitioner's responses to the motion for summary judgment (ECF 27, ECF 33); respondent's reply to petitioner's response (ECF 34); and petitioner's "Amendment: Response to the Parole Commission's Motion for Summary Judgment" (ECF 35).

[4] Although previous dispositive motions were denied, the exhibits attached thereto, to the extent that they are relevant, are referenced herein.

[5] Turnage seeks copies of various pleadings filed in this case at government expense, stating that he was required to ship his copies home and "believes it is futile to try and direct a family member to search through the legal box and capture the intended document(s)." ECF 50. There is no claim that the documents are unavailable; rather, the claim is that their recovery would be inconvenient. Therefore, I shall deny Turnage's request to copy documents at government expense.

needed to resolve the issues raised herein. *See* Local Rule 105.6; *see also* 28 U.S.C. § 2243. For the reasons that follow, the petition will be dismissed.

**Background**

At issue is the Commission warrant of January 8, 2010, charging Turnage with violation of the conditions of his parole based on his arrest by Maryland authorities in October 2009. Turnage's lengthy history of incarcerations, parole, and recidivism leading to parole revocation directly bears on the matter under consideration.

Turnage was sentenced by the United States District Court for the District of Maryland on December 3, 1987, to a 15-year term of imprisonment for robbery and larceny of a savings and loan and aiding and abetting. *See United States v. Turnage,* Criminal No. S-87-0439 (D. Md.); *see also* Judgment and Commitment Order, ECF 26-2 at 2; Sentence Monitoring Computation Data, ECF 26-2 at 3-7. He was paroled on December 22, 1993, and was to remain under supervision until August 25, 2002. Certificate of Parole, ECF 26-2 at 8.

Turnage was in state custody from July 22, 1994 to April 4, 1995, following an assault and battery conviction, and again from June 25, 1996 to October 18, 1997, following a burglary conviction, for a period totaling just over 24 months in state custody. *See* Notice of Action on Appeal, ECF 26-2 at 14. The Commission executed a warrant for violation of parole on April 9, 1998, and Turnage was taken into custody on that warrant on May 7, 1998. Warrant, ECF 26-2 at 12; Warrant for Return, ECF 26-2 at 13. By notice of action dated December 8, 1998, the Commission revoked Turnage's parole, ordered that he receive no credit for time spent on parole (*i.e.*, "street time"), and required that he serve 60 months of incarceration before returning to presumptive parole status on February 1, 2002. ECF 26-2 at 10.

---

[6] As Turnage previously was granted indigency status (ECF 7), his second motion for leave to proceed in forma pauperis (ECF 51) shall be denied as moot.

On appeal, the Commission's National Appeals Board awarded Turnage the periods of "street time" which were forfeited from December 22, 1993 (date of federal parole) to July 21, 1994, from April 4, 1995 (first release from state custody) to June 25, 1996, and from October 18, 1997 (second release from state custody) to May 7, 1998 (arrest on federal parole violation warrant). The National Appeals Board clarified these orders by notice of action on appeal dated March 17, 1999, and advanced the presumptive re-parole date after 60 months of incarceration from the date originally ordered (February 1, 2002) to May 7, 2001. ECF 26-2 at 14.

Turnage was re-paroled on August 6, 2001, and his parole supervision period was extended until January 7, 2007.[7] Certificate of Parole, ECF 26-2 at 15. He was arrested on a new parole violation warrant on March 24, 2005. Warrant, ECF 26-2 at 18; Warrant for Return, ECF 26-2 at 19. The Commission conducted a parole revocation hearing on July 19, 2005, and ordered revocation of parole with no credit for street time (from May 7, 2001 to March 24, 2005), and ordered Turnage to serve 32 months of incarceration (to November 24, 2007) prior to re-parole. *See* Notice of Action, ECF 26-2 at 23-25; Hearing Summary, ECF 26-2 at 20-22. The Commission then received information from the federal Bureau of Prisons ("BOP") indicating that the state charges which triggered parole revocation were *nolle prossed* on March 23, 2005, giving Turnage an additional 4 months and 24 days of credit towards his federal sentence.[8]

---

[7] Respondent states—and Turnage does not deny—that the re-parole period was extended 91 days due to violation of institutional rules. ECF 26-1 at 2. *See generally Bono v. Benov*, 197 F.3d 409, 413 (9th Cir. 1999) ("A presumptive release date, or presumptive parole date, is not conclusive because 'the Commission is not obliged under all circumstances to release an inmate on the date it initially sets.'") (quoting *United States ex rel. Forman v. McCall,* 709 F.2d 852, 854-55 & n. 4 (3d Cir.1983)).

[8] Because the state charges were *nolle prossed*, the period during which Turnage was held pending trial, from December 3, 2004 to March 23, 2005, was credited to his federal sentence.

Memorandum, ECF 26-2 at 16; Notice of Action, ECF 26-2 at 27. Accordingly, the Commission advanced Turnage's parole date to July 1, 2007. Notice of Action, ECF 26-2 at 27.

Turnage was re-paroled on July 1, 2007, to remain under supervision until May 5, 2010. Certificate of Parole, ECF 26-2 at 28. Of import here, on December 23, 2009, the Commission was informed that Turnage had been arrested by Maryland authorities on several charges, including armed robbery, robbery, assault with a dangerous weapon, assault, and theft.[9] *See* Warrant Application, ECF 26-2 at 30. On January 8, 2010, the Commission issued a violation warrant charging petitioner with violating the conditions of parole in connection with the arrest. Warrant Application, ECF 26-2 at 30-31; Warrant, ECF 26-2 at 32. The Commission instructed the United States Marshal that if Turnage already was in state custody, the warrant should be placed as a detainer, so that Turnage would be taken into custody when released by state authorities. Memorandum, ECF 26-2 at 34.

On March 6, 2012, the Commission informed the Warden at MCI-H that it was commencing a dispositional review of its detainer pursuant to 18 U.S.C. § 4214(b)(1), and enclosed documents to be given to Turnage, including a Notice of Pending Dispositional Review on the Record, and a Form CJA-22 to request assistance of counsel for the dispositional review. ECF 26-2 at 35-43. The Notice of Pending Dispositional Review on the Record informed Turnage that the Commission would conduct a dispositional review of the detainer pursuant to 28 C.F.R. § 2.47. ECF 26-2 at 36.

By notice of action dated October 11, 2012, the Commission informed Turnage that its detainer would stand. ECF 26-2 at 53. The notice of action instructed the United States Marshals Service to notify the Commission when its warrant was executed, and to return the

---

[9] Turnage indicates he was arrested by Maryland authorities on or about October 30, 2009. ECF 1 at 1.

executed warrant to the Commission. *Id.* Turnage completed his Maryland sentence, was taken into federal custody on the parole violation warrant on May 16, 2013, and was committed to the District of Columbia Correctional Treatment Facility. *See* ECF 43-2.

On May 30, 2013, the Commission requested the BOP to "promptly" designate Turnage's transfer to a federal institution so that he could receive a revocation hearing within 90 days. ECF 43-3. That same day, the Commission sent Turnage a probable cause letter indicating a parole revocation hearing would be scheduled based on the Maryland armed robbery, robbery, theft, assault, and weapons charges. ECF 43-4 at 1-2.

A parole revocation hearing scheduled at the Federal Detention Center in Philadelphia, Pennsylvania for July 16, 2013, was postponed when Turnage's attorney did not appear. ECF 43-6. At the rescheduled parole revocation hearing on August 14, 2013, Turnage was represented by counsel. *See* ECF 43-8 at 1. The hearing examiner recommended revocation of parole, that no credit be given for time on parole, and that Turnage remain incarcerated until the expiration of his sentence. *Id.* at 2. Under this recommendation, Turnage would serve approximately 68 months in prison, including credit towards the guidelines of 45 months for time spent in state custody, with a re-parole guideline range of 60 to 72 months of incarceration. *See id.* On August 30, 2013, the Commission concurred. ECF 45 at 2. Turnage's estimated release date has been calculated as April 13, 2015. ECF 43-7 at 5.

## Discussion

Under the Sentencing Reform Act of 1984 ("SRA"), federal parole was abolished and the Commission was to be phased out over time. *See Bledsoe v. United States*, 384 F.3d 1232, 1233 (10th Cir. 2004). The Commission was to be kept in existence for five years after the effective date of the SRA, in order to process inmates whose convictions predated the SRA and who

6

would still be incarcerated by that date. The Commission's operation has been extended multiple times since the effective date of the SRA, most recently in 2011. *See id.*; *Bowers v. Keller*, 651 F.3d 1277, 1281 & n.7 (11th Cir. 2011); United States Parole Commission Extension Act of 2011, Pub.L. No. 112–44, 125 Stat. 532. Statutes relating to the Commission, 18 U.S.C. §§ 4201–4218, were repealed but remain in effect for prisoners, like Turnage, who are under the authority of the Commission. *See Bledsoe*, 384 F.3d at 1233-34. Turnage's claims shall therefore be examined in light of statutory law, case law, and regulations relating to the Commission and federal parole.

**1. Federal Sentence Expiration**

Turnage contends that his federal sentence expired in 2010. *See* Ex. B, ECF 8 at 5; ECF 33. He suggests that because the warrant was not acted upon prior to that date, the Commission's subsequent actions are invalid and he is entitled to immediate release from federal custody.

It is true that Turnage's sentence would have expired on or about May 5, 2010, had Turnage successfully completed parole supervision. *See* Certificate of Parole, ECF 26-2 at 28. Such success, however, was never realized. In October 2009, Turnage was charged in the Circuit Court for Baltimore City and later convicted of second-degree assault and theft, resulting in a 12-year sentence.[10] *See* ECF 43-5 at 2. Upon learning of Turnage's new arrest, the Commission issued a warrant on January 8, 2010, charging Turnage with violation of the conditions of parole. The issuance of this warrant prior to the scheduled expiration date of May 5, 2010, tolled the running of his federal sentence and preserved the Commission's jurisdiction to

---

[10] *See* Circuit Court for Baltimore City, Criminal Case No.109324011, http://casesearch.courts.state.md.us/inquiry/inquiryDetail.jis?caseId=109324011&loc=69&detailLoc=DSK8.

take Turnage into custody for violations of parole after that scheduled expiration date. *See, e.g.*, *Anderson v. United States*, 898 F.2d 751, 752 (9th Cir. 1990) (issuance of parole violation warrant tolls running of the sentence); *see also* 28 C.F.R. § 2.47(e)(2) ("[I]t shall be the policy of the Commission that the revoked parolee's original sentence (which due to the new conviction, stopped running upon his last release from federal confinement on parole) again start to run only upon release from the confinement portion of the new sentence . . . ."); *Russie v. U.S. Department of Justice*, 708 F.2d 1445, 1448 (9th Cir. 1983) (warrant issued before sentence expiration date may be executed afterward, and the issuance of parole violation warrant tolls running of the sentence, which commences running when the warrant is executed); *Martin v. Luther*, 689 F.2d 109 (7th Cir. 1982) (issuance of parole violation warrant before full term expiration date retains Commission's authority to conduct revocation hearing after that date has passed).

Turnage argues in the alternative that his sentence expired in full prior to the issuance of the detainer because he "is or was entitled to statutory good time, which would or should have made this 15 year sentence complete." ECF 33 at 1-2. As noted by respondent, Turnage misunderstands the purpose of "good time credits," thus rendering his computation of total sentence time incorrect. Good time credits do not commute the length of a sentence, but rather are only used to determine the date on which a prisoner, not having been earlier released on parole, must be released "as if released on parole" by operation of law under 18 U.S.C. § 4164. Once a prisoner has been paroled, good time credits have no further function. Pursuant to regulation,

> Once an offender is conditionally released from imprisonment, either by parole or mandatory release, the good time earned during that period of imprisonment is of no further effect either to shorten the period of supervision or to shorten the period of imprisonment which the offender may be required to serve for violation of parole or

8

mandatory release.

28 C.F.R. § 2.35(b); *see also Boniface v. Carlson*, 881 F.2d 669, 671 (9th Cir. 1989); *Bailey v. Southerland*, 821 F.2d 277, 278-79 (5th Cir. 1987).

## 2. Entitlement to Hearing Upon Request

Turnage's claim that he was entitled to a prompt parole revocation hearing upon request while serving his Maryland sentence likewise is unavailing.[11] It is well settled that the right to a parole revocation hearing accrues when the alleged violator is taken into custody pursuant to a parole violation warrant, and that a person serving a new sentence with a violation warrant lodged as a detainer has no right to a revocation hearing. *See Moody v. Daggett*, 429 U.S. 78, 89 (1976). In *Moody*, the defendant was on parole after serving a term of confinement for a conviction of a federal crime, when he committed another federal crime. *Id*. at 80. Soon after the defendant was incarcerated for the second crime, the Commission's predecessor, the Parole Board ("Board") issued, but did not execute, a warrant for the defendant for violating his parole by committing the second crime. *Id*. The defendant asked the Board to execute the warrant immediately so that any term of imprisonment imposed for his parole violation could run concurrently with his incarceration for the shootings, but the Board refused to execute the warrant until the defendant was released for his second crime. *Id*. at 81.

The Supreme Court held that there was no requirement for an immediate hearing before the defendant was taken into custody as a parole violator. *Id*. at 86. The Court further concluded that the defendant did not have the right to force the immediate decision of the Board, and that a ten-year delay in execution of the warrant would not violate his due process rights. *Id*. at 87-88.

---

[11] This argument is based on Turnage's assumption that because his request for adjudication of the detainer did not occur until his release from his Maryland sentence, his federal sentence expired. For reasons explained above, Turnage's assumption that his federal sentence expired on May 5, 2010, is flawed.

9

Thus, pursuant to *Moody,* until an alleged violator is in custody pursuant to the Commission's warrant, he or she is not entitled to the various procedural rights, including a revocation hearing.[12]

Turnage attempts to distinguish his case from *Moody,* arguing that the Board "issued, but <u>did</u> <u>not</u> execute the warrant or lodge [it] as a detainer and subsequently the defendant [in Moody] ask[ed] the Board to execute the warrant immediately so that any term of imprisonment imposed, could run concurrently . . . ." ECF 8 at 1-2 (emphasis in original). This distinction is immaterial.

At the time Turnage filed the instant petition, he was still serving his newly imposed Maryland sentence for crimes committed while on parole, and the Commission's parole revocation warrant remained lodged as a detainer to be executed following Turnage's release from state custody. Turnage had no right to a revocation hearing until such time as he completed his Maryland sentence and was taken into federal custody pursuant to an executed retake warrant. *See* 28 C.F.R. § 2.47(a) ("When a parolee is serving a new sentence in a federal, state, or local institution, a parole violation warrant may be placed against him as a detainer.").

### 3. Entitlement to Hearing Pursuant to Regulation

Turnage claims that he had a regulatory right to a revocation hearing upon completion of 24 months' imprisonment for a state conviction, pursuant to 28 C.F.R. § 2.47(b)(1) and *Heath v. U.S. Parole Commission*, 788 F.2d 85, 90-91 (2d Cir. 1986). There is no basis for this claim. Subsequent to *Heath,* the Commission amended its regulation such that the current regulation does not provide that a prisoner serving a new state sentence is entitled to a revocation hearing.

---

[12] The question of whether Turnage was afforded adequate due process under *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972), once he was brought before the Commission, is not at issue here.

*See* 28 C.F.R. § 2.47(a)(2). To the contrary, it provides that, for a prisoner serving a new state sentence, the Commission shall review the detainer warrant "not later than 180 days following notification to the Commission" of placement of the detainer. *Id*. The rule did not mandate a revocation hearing while serving a new sentence in state custody even though Turnage committed his federal offense in 1987. Rather, the rule gave the Regional Commissioner the option to order a revocation hearing at the state institution or, alternatively, to "let the detainer stand." *Compare* 28 C.F.R. § 2.47(c) (1987 ed.) *with* 28 C.F.R. § 2.47(c) (1986 ed.).

Here, the Commission opted for the latter. At no time during the pendency of his federal sentence did Turnage have a regulatory right to a revocation hearing after serving 24 months on his Maryland sentence.

### 4. Credit for Time Served

Turnage claims he is entitled to credit towards his federal sentence for the time spent in state custody, pursuant to 28 C.F.R. § 2.21(c). ECF 33 at 5. The regulation merely provides: "Time served on a new state or federal sentence shall be counted as time in custody *for reparole guideline purposes*. This does not affect the computation of the expiration date of the violator term as provided by §§ 2.47(e) and 2.52(c) and (d)." 28 C.F.R. § 2.21(c) (emphasis added). The plain terms of the regulation foreclose Turnage's argument that the time he has spent in state custody must be credited to his federal sentence. *See Bowen v. U.S. Parole Com'n*, 805 F.2d 885, 888 (9th Cir. 1986) (explaining the difference between sentence credit and reparole guidelines credit); *Berg v. U.S. Parole Com'n*, 735 F.2d 378, 379 (9th Cir. 1984); *Staege v. U.S. Parole Com'n*, 671 F.2d 266, 269 (8th Cir. 1982). Thus, although Turnage may be credited towards re-parole under the guidelines for the time spent in state custody, he has no legal entitlement to credit towards his federal sentence for this time, and it does not reduce the full

11

term of his sentence as he erroneously believes. *See also* 28 C.F.R. § 2.52(c)(2) ("It is the Commission's interpretation of 18 U.S.C. 4210(b)(2) that, if a parolee has been convicted of a new offense committed subsequent to his release on parole, which is punishable by any term of imprisonment, detention, or incarceration in any penal facility, forfeiture of time from the date of such release [on parole] to the date of execution of the warrant is an automatic statutory penalty, and such time shall not be credited to the service of the sentence.").

**5.     Due Process**

Having determined that the warrant and detainer were validly issued, I next examine whether Turnage's procedural due process rights were afforded with regard to execution of the detainer. The Commission's regulations provide that, if a prisoner is serving a new state sentence, the Commission will review the detainer "not later than 180 days following notification to the Commission of such placement [of the warrant as a detainer]." 28 C.F.R. § 2.47(a)(2).

Here, the warrant was issued as a detainer on January 8, 2010, and Turnage was promptly provided notification of its existence and that if convicted of a new state offense, he could "not receive sentence credit for the time [he] spent on parole." ECF 26-2 at 30, 34. On October 21, 2011, one month prior to instituting the instant action, Turnage wrote the Commission concerning disposition of the detainer. Turnage was informed on March 6, 2012, that the Commission would conduct a disposition review of his case pursuant to 28 C.F.R. § 2.47. *Id.* at 45. The Commission then contacted this court that Turnage had requested counsel to assist in the completion of his application for a disposition review that would be scheduled within 180 days. *Id.* at 46.

The Commission's review of the detainer occurred on October 11, 2012, more than one month beyond the 180 day period provided by regulation. Turnage does not detail any prejudice

suffered as a result of this brief delay. Indeed, he was taken into federal custody immediately following the completion of his Maryland sentence and ultimately given guideline credit for time spent in state custody, and is due to be released in little more than one year. ECF 43-7 at 5; ECF 43-8 at 1-2; ECF 45 at 1.

Respondent does not contest that Turnage's disposition review was not timely, ECF 34 at 4, but instead argues that the delay does not affect the validity of the detainer and the subsequent revocation of Turnage's parole. Turnage's argument that the delay "prolonged & extended" his federal sentence, ECF 41 at 2, is specious, given that the detainer was lodged while he was completing a state sentence, and Turnage was given reparole guideline credit for time served on that sentence.

To the extent that this action may be construed as a request for mandamus relief under 28 U.S.C. § 2241, the outcome advocated by respondent stands. Any claim Turnage may have regarding due process associated with the delay in commencing disposition review of the detainer is moot, as he has now received the only remedy to which the regulations entitle him: review of the detainer by the Commission. *See Heath*, 788 F.2d at 88-90 (appropriate remedy for late dispositional review is mandamus to compel review, not habeas corpus); *Sutherland v McCall*, 709 F.2d 730, 732 (D.C. Cir. 1983) (mandamus, not habeas relief, is appropriate remedy for procedural error by Commission). It is not apparent whether Turnage raised the validity of the detainer at his revocation hearing; that issue, however, is not before this Court.

Having determined that Turnage is not entitled to habeas corpus or mandamus relief, I must now examine whether he is entitled to a certificate of appealability. A certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U. S.C. § 2253(c)(2). The petitioner "must demonstrate that reasonable

jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (citation and internal quotation marks omitted), or that "the issues presented are adequate to deserve encouragement to proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Such a showing is not found here.[13]

Accordingly, a separate Order shall be entered dismissing the petition, denying a certificate of appealability, and closing this case.


Date: April 2, 2014                                      /s/
                                                   Ellen Lipton Hollander
                                                   United States District Judge

---

[13] Under Rule 11(a), if the district court denies a certificate of appealability, a party may seek a certificate from the Court of Appeals under Fed. R. App. P. 2. However, the petitioner may not appeal the district court's denial of the certificate of appealability.